UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:13-CR-814 |
| | § | |
| JOSE GALLEGOS, PRO SE | § | |

### ORDER DENYING MOTIONS TO SUPPRESS

Before the Court are Defendant Jose Gallegos's Motions to Suppress Evidence. (D.E. 22 and 23). For the reasons set forth below, Defendant's Motions to Suppress (D.E. 22 and 23) are **DENIED**.

### FINDINGS OF FACT

At approximately 3:00 p.m., on August 17, 2013, Jose Gallegos ("Defendant") approached the Sarita U.S. Border Patrol Checkpoint driving a black 2007 Nissan Altima. In the primary inspection lane, U.S. Border Patrol Agent Omar Montiel ("Agent Montiel") observed two occupants in the vehicle—Defendant and a young female passenger, later identified as Argelia Pelaez-Merino ("Pelaez-Merino"). Agent Montiel asked Defendant if he was a U.S. Citizen, and Defendant said that he was. Agent Montiel asked Pelaez-Merino if she was a U.S. Citizen, but she was unable to respond. Agent Montiel then asked Pelaez-Merino if she had documentation to establish her citizenship, but she only replied, "Austin." Agent Montiel asked Defendant how he knew Pelaez-Merino, and Defendant indicated that she was his daughter.

Agent Montiel directed Defendant to the secondary inspection lane where it was determined that Pelaez-Merino was a citizen of Mexico and was in the United States

illegally.  At this point, Defendant was placed under arrest and led into the checkpoint's processing room.  Agent Montiel read Defendant his Miranda rights, and Defendant made a voluntary statement indicating that he and Pelaez-Merino were going to Austin, Texas for Pelaez-Merino to live with him.  Defendant denied having any knowledge that Pelaez-Merino was in the United States illegally.  Following his statement, Defendant was placed in a holding cell and remained detained until making an Initial Appearance before Magistrate Judge Jason B. Libby on Monday, August 19, 2013.

Upon his arrest at the checkpoint, Defendant's personal property was collected by U.S. Border Patrol agents.  The cell phone at issue was seized from Defendant's person, inventoried, documented with custody receipts, and then turned over to Special Agent Juan Alvarado, Jr. ("SA Alvarado").  SA Alvarado took custody of the cell phone and on August 22, 2013, presented search warrants for the cell phone to United States Magistrate Judge Jason B. Libby.  The contents of the cell phone were then extracted.

## LEGAL ANALYSIS

Defendant moves for the suppression of "all evidence, oral or tangible, obtained directly or indirectly" from his arrest, detention, and interrogation.  (D.E. 23, p. 1).  In favor of his motions, Defendant argues that the items were seized as a result of an illegal, warrantless search and that statements made by Defendant in connection with his arrest, detention, and interrogation were involuntary.  Defendant also complains that there was unnecessary delay in presenting him before a magistrate judge after his arrest.  Defendant requests that all evidence seized or otherwise obtained be suppressed on the basis that it was obtained in violation of his Fourth, Fifth, and Sixth Amendment rights.

### A. Cell Phone

Defendant argues that U.S. Border Patrol agents violated his Fourth Amendment right to be free from unreasonable searches and seizures by seizing his cell phone without obtaining a search warrant. (D.E. 23, p. 1). The Government argues that the seizure of the cell phone was a lawful seizure because it was performed incident to Defendant's arrest and the subsequent search of the cell phone was done pursuant to a valid search warrant. (D.E. 38, p. 5-6, 7).

A search incident to arrest is "not only an exception to the warrant requirement of the Fourth Amendment, but it is also a reasonable search under that Amendment." *United States v. Finley*, 477 F.3d 250, 259 (5th Cir. 2007) (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973)), *cert. denied*, 549 U.S. 1353 (2007). In addition to the arrestee's person, "[t]he permissible scope of a search incident to a lawful arrest extends to containers found on the arrestee's person." *Id.* at 260. The Court in *Finley* specifically concluded that the authorization to search containers extends to cell phones and their content. *Id.*

Here, the seizure of Defendant's cell phone during a search of his person fell squarely within the exception articulated in *Finley* and *Robinson* as a search incident to arrest. SA Alvarado credibly testified that the procedures accompanying the seizure of Defendant's cell phone were consistent with the cell phone being found on Defendant's person once he was taken into custody. The Court finds that Defendant's cell phone was seized from his person and rejects Defendant's argument that the cell phone was seized from his vehicle during an inventory search. Further, the factual record establishes that

the extraction of data from Defendant's cell phone was conducted pursuant and subsequent to a valid search warrant being issued.

The Court concludes that the seizure of Defendant's cell phone was reasonable and the search of its content was lawful. Neither the search nor the seizure constituted a violation of Defendant's Fourth Amendment rights and the evidence obtained therefrom is not entitled to suppression.

**B.     Defendant's Statements**

    **1.     Pre-Arrest**

Defendant moves for this Court to suppress all oral evidence obtained from his arrest, detention, and interrogation pursuant to FED. R. CRIM. P. 41(e).  (D.E. 23, p. 1). The Fourth Amendment to the U.S. Constitution protects people against unreasonable searches and seizures of their persons and effects. Nonetheless, the Supreme Court has held that warrantless "stops for brief questioning routinely conducted at permanent checkpoints are consistent with the Fourth Amendment." *United States v. Martinez-Fuerte*, 428 U.S. 543, 566 (1976).  Significantly, "[t]he scope of an immigration checkpoint stop is limited to . . . determining the citizenship status of persons passing through the checkpoint [and] [t]he permissible duration of an immigration checkpoint stop is therefore the time reasonably necessary to determine the citizenship status of the persons stopped." *United States v. Machuca-Barrera*, 261 F.3d 425, 433 (5th Cir. 2001). This would include the time necessary to ascertain the number and identity of the occupants of the vehicle, inquire about citizenship status, request identification or other proof of citizenship, and request consent to extend the detention. *Id.*

The Government correctly observes that Agent Montiel's investigation at the primary inspection checkpoint was within the scope of a permissible inspection as authorized by Supreme Court and Fifth Circuit precedent. Agent Montiel ascertained that there were two people in Defendant's vehicle, made inquiries to determine the identities and citizenship status of each individual, and when the result of those inquiries raised suspicion, Agent Montiel directed Defendant to secondary inspection. Each of these actions is expressly within the limits articulated by the Fifth Circuit in *Machuca-Barrera*.

The Court concludes that statements made by Defendant prior to his arrest were lawfully obtained. Accordingly, the stop did not violate Defendant's Fourth Amendment rights and no warrant was required, rendering FED. R. CRIM. P. 41(e) inapplicable. Any statements made in connection with the stop are not entitled to suppression.

### 2. Post-Arrest

Defendant argues that "the nature of questioning and the promises made therein, without counsel, make the statements made by [Defendant] involuntary and the result of violations of the Fourth, Fifth, and Sixth Amendments . . . ." (D.E. 23, p. 2). The Government counters that Defendant validly waived his Miranda rights and any subsequent statements were voluntary. (D.E. 38, p. 5).

A statement "is voluntary if, under the totality of the circumstances, the statement is the product of the accused's free and rational choice." *United States v. Bell*, 367 F.3d 452, 461 (5th Cir. 2004) (citing *United States v. Broussard*, 80 F.3d 1025, 1033 (5th Cir.1996)). In order to establish that his statement was involuntary, Defendant must

demonstrate that it was the product of coercive conduct and that there was a link between such conduct and the statement in question. *Id.* Here, Defendant asserts that his statements to U.S. Border Patrol agents were involuntary, but he does not identify any conduct on the part of the agents which could be characterized as coercive, much less establish a link between any such conduct and his statement. Indeed, the statement that Defendant complains of was a statement denying culpability for any criminal activity. This fact undermines the notion that Defendant was coerced into making a statement against his own interest to U.S. Border Patrol agents. There are no facts on the record to support Defendant's claim that his statements were taken involuntarily.

The Court concludes, based on the totality of the circumstances, that Defendant's post-arrest statements to U.S. Border Patrol agents were voluntary and did not constitute a violation of his Fifth Amendment rights. Accordingly, Defendant's post-arrest statements are not entitled to suppression.

### C. Initial Appearance Delay

Defendant claims that after his arrest, "[h]e was not brought before the arraigning Judge for at least six days" and that the unnecessary delay was a violation of his rights. (D.E. 23, p. 1). Defendant's claim cannot be supported by the evidence on the record. Defendant was arrested on the afternoon of Saturday, August 17, 2013. Defendant appeared before United States Magistrate Judge Jason B. Libby for an Initial Appearance on Monday, August 19, 2013—the first business day after his arrest. (D.E. Minute Entry of Initial Appearance as to Jose Gallegos). Defendant did not suffer undue delay in

appearing before a magistrate judge in violation of the Sixth Amendment, and suppression would be improper on that basis.

## CONCLUSION

For the reasons set forth above, Defendant Jose Gallegos's Motions to Suppress Evidence (D.E. 22 and 23) are **DENIED**.

ORDERED this 1st day of November, 2013.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE